IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


JEFFREY TAYLOR, as an adult individual   :
          Plaintiff,

       v.             :
                                 CIVIL NO. 07-4883

REBECCA MOLETSKY, in her individual
capacity and as an agent of the Borough of   :
Pottstown; and
THE BOROUGH OF POTTSTOWN
          Defendants.       :


**<u>MEMORANDUM</u>**


**Jones, J.**                                                    **January 22, 2010**


I.      **Introduction**

      The above-captioned matter involves constitutional claims resulting from injuries

sustained by Plaintiff Jeffrey Taylor when he was struck by Defendant Rebecca Moletzsky's[1]

police vehicle. Specifically, Plaintiff alleges that: (1) Defendant Borough of Pottstown violated

his civil rights under 42 U.S.C.A. §1983 by developing and maintaining policies and customs

which exhibited deliberate indifference to the constitutional rights of people in Pottstown

(namely, inadequate/improper investigation of citizen complaints of police misconduct;

inadequate/improper training of police officers; inadequate disciplining and sanctioning of police

---

     [1] Throughout the exhibits offered by both parties, Defendant Rebecca Moletzsky's last name is spelled two different ways: Moletzsky and Moletsky. Inasmuch as the deposition transcript, the Police Crash Reporting Form, and the Incident Investigation Report all utilize the former spelling, this Court will do so as well.

1

officers who engage in unlawful conduct; and, inadequate training against a code of silence or "blue code" within the police department);[2] (2) Defendant Rebecca Moletzsky utilized "unjustified" and "unreasonable" force against Plaintiff, in violation of his constitutional rights under 42 U.S.C.A. §1983;[3] (3) Defendant Borough of Pottstown violated Article I, Section 8 of the Pennsylvania Constitution by depriving Plaintiff of his right to be free from the use of excessive force;[4] and, (4) Defendant Rebecca Moletzsky violated Article I, Section 8 of the Pennsylvania Constitution by depriving Plaintiff of his right to be free from the use of excessive force.[5]

After extensive opportunities for Plaintiff to secure discovery pertaining to his *Monell*[6] claim, Plaintiff obtained an expert report from Criminologist R. Paul McCauley. Dr. McCauley concluded in pertinent part that the customs, policies and procedures within the Pottstown Police Department contributed to a deprivation of Plaintiff's constitutional rights. Subsequent to receiving Dr. McCauley's Report, Defendants filed a Motion for Summary Judgment, seeking dismissal of Plaintiff's entire Complaint. Plaintiff responded and said Motion is currently before this Court for disposition. For the reasons set forth hereinbelow, Defendants' Motion will be granted in part and denied in part.

---

[2] (Compl., Count I.)

[3] (Compl., Count II.)

[4] (Compl., Count III.)

[5] (Compl., Count IV.)

[6] *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

## II.    Undisputed Facts

Plaintiff Jeffrey Taylor instituted this action by filing a Complaint in the Eastern District of Pennsylvania on November 20, 2007.  Said Complaint alleged that on or about June 24, 2006, at approximately 3:00 a.m. Plaintiff was walking eastbound on the sidewalk in the area of the 1400 block of East High Street, Pottstown, Pennsylvania.  Located at 1428 East High Street was a McDonald's restaurant.  (Comp. ¶ 12.)   At this time., the roadways in Pottstown, PA were wet as a result of rainfall. (Compl. ¶ 13.)  Also at this time,  Police Officer Rebecca Moletzsky was operating a marked radio patrol car for the Pottstown Borough Police Department and was in the area of the 1400 block of High Street. (Compl. ¶¶14-15.)

A short time earlier that morning (at approximately 2:09 a.m.), Corporal Michael Pronto of the Pottstown Borough Police Department observed a red Jeep Cherokee with Pennsylvania license number DLS1791 on the highway with litter laying nearby  and approached it to investigate. (Prelim. Hr'g. Tr . 4:15-24; 5:1-23.)  The vehicle was occupied by Plaintiff, Jeffrey Taylor. (Taylor Dep. 42:14.) When he saw the lights from the police car, Plaintiff "got out of the car and ran."  (Taylor Dep. 42:23-24; 43:1-5.)  At the time Plaintiff ran, he knew that he had consumed five or six beers at a bar, between the hours of 12:00 a.m. and 2:00 a.m.. (Taylor Dep. 30:6-7; 32:15-20; 33:10-11.)  At the time he ran, Plaintiff knew that he did not possess a valid driver's license, and that he would be arrested if stopped. (Taylor Dep. 44:6-8.)  Plaintiff had been found guilty on three occasions of Driving Under the Influence, and had his license suspended until 2012. (Taylor Dep. 12:14-19; 15:5-8.)  At the time he fled, Plaintiff knew he was

on probation for a 2004 conviction for fleeing and eluding the police. (Taylor Dep. 16:14-18.)[7] After successfully eluding Corporal Pronto, Plaintiff hid in neighborhood yards for a time, and then walked back towards the McDonald's on High Street. (Taylor Dep. 47:7-11; 48:13-16.) Around 3:00 a.m., Plaintiff was approached by Police Officer Moletzsky, in a marked patrol car. (Taylor Dep. 51:8-12.) Officer Moletzsky spoke to him through her open car window and told him to stop, but Plaintiff refused. (Taylor Dep. 52:6-24; 53:1-9.) At the time Officer Moletzsky approached Plaintiff, she informed him that she was looking for someone that fit his description. (Taylor Dep. 53:4-6.) Plaintiff fled on foot, through some bushes and into the McDonald's parking lot on High Street. (Taylor Dep. 55:6-7.) Contrary to the numerous prior times when Plaintiff had fled from the police, he felt something was different, as Officer Moletzsky did not get out of her car to run after him. (Taylor Dep. 65:22-24; 66:1-2.) Officer Moletzsky's police car ultimately struck Plaintiff, causing him to fall to the ground. (Taylor Dep. 68:22-24; 69:7-9.)[8]

---

[7] Defendants contend that "At the time he fled, Plaintiff knew he was in possession of marijuana in his vehicle, claiming that "somebody" had left it there." Plaintiff disputes this fact on the basis that although Plaintiff testified at his deposition that "somebody" had left the marijuana in the car, he also stated that he did not know it was there. (Taylor Dep. 40:9-20.)

[8] Plaintiff disputes Defendants' version of all of the facts pertaining to the manner in which he was stricken by the police car and what happened afterwards. Defendants contend Officer Moletzsky stopped the vehicle immediately, realized the vehicle was on top of Plaintiff's leg, and immediately backed the car off his leg. During his deposition, Plaintiff testified that once Officer Moletzsky struck him, she "parked the car on top of [his] leg" and when he began screaming, she backed the car off of his leg. (Taylor Dep. 69:20-21; 70:3-10.) Defendants further state that despite having been struck by the police car, Plaintiff again attempted to flee. Plaintiff claims he tried to take one step and collapsed. (Taylor Dep. 71:11-12.) Defendants next assert that no more than thirty seconds elapsed from the time Officer Moletzsky first approached the Plaintiff, until the time he was struck by her patrol car. (Def.s' Exs. In Supp. Summ. J., Ex. E at 14 min. 15 sec. to 14 min. 45 sec.) Plaintiff rejects this statement, arguing that the police radio transmission is an unreliable means of measuring the length of the time involved herein and that the identities of the declarants are uncertain. With regard to Defendants' assertions that Plaintiff ran in front of Officer Moletzsky's patrol car, he

Jeffrey Taylor was charged with possession of marijuana, possession of drug paraphernalia, receiving stolen property, disorderly conduct, driving under suspended license (DUI related), and depositing waste on a highway. (Def.s' Exs. in Supp. Summ. J., Ex. B.)

### III.    Discussion

The standard for assessing a Motion for Summary Judgment is well-settled:

> A court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court has further ruled that a "genuine" issue exists if "the evidence is such that a reasonable jury could return a verdict for the non-moving party," and a factual dispute is "material" when it "might affect the outcome of the suit under the governing law."

> In considering a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." In a summary judgment motion, the moving party has the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. The party opposing the motion, however, cannot rely merely upon bare assertions, conclusory allegations, or suspicions to support its claim.

---

states that when he saw that she was coming straight at him, he ran to get away from her. (Taylor Dep. 61:15-21.) Defendants further state that Officer Moletzsky hit her brakes and attempted to avoid collision with the Plaintiff but that her car was skidding at the time of impact, while Plaintiff claims that the only noise he heard was acceleration of the engine. (Moletzsky Dep. 75:15-17; Taylor Dep. 108:22-24; 109:2-6.) As such, in response to Defendants' statement that Officer Moletzsky did not intentionally strike Plaintiff with her police vehicle, Plaintiff testified that he believes she used her police car to chase him and run him down.(Taylor Dep. 109:15-17.) Lastly, Defendants contend that in attempting to avoid hitting Plaintiff, Officer Moletzsky applied the brakes and swerved her vehicle but skidded on the wet surface, as it had been raining all night. (Moletzsky Dep. 75: 15-17.) However, Plaintiff testified that Officer Moletzsky continued to pursue him with her vehicle, getting "closer and closer and closer" as she rode behind him, to his left side before finally striking him. (Taylor Dep., 68:3-17.)

*Sentry Select Ins. Co. v. LBL Skysystems (U.S.A.), Inc.*, 486 F. Supp. 2d 496, 506 (E.D. Pa. 2007)(citations omitted).

As specifically relevant to this case . . .

> . . . In order to survive a motion for summary judgment on a [S]ection 1983 claim, a plaintiff must show that the defendant acted under color of state law, and that the plaintiff was deprived of a federal constitutional right. [Where] there is no dispute that [ ] [Defendants] were state actors, the focus of the Court's analysis is whether any Defendant transgressed [Plaintiff's] constitutional rights. Thus, in order for [Plaintiff's] section 1983 claim to survive a motion for summary judgment, the Court must find a genuine issue of material fact as to this issue.

*Marshall v. Penn Twp*., 2009 U.S. Dist. LEXIS 93210, at **15-16 (W.D. Pa. Sept. 30, 2009).

In the Motion for Summary Judgment presently before this Court, Defendants contend that: (1) Plaintiff cannot support claims for violations of 42 U.S.C.A. §1983 on the basis of potentially negligent conduct by Officer Moletzsky in the operation of her police vehicle; (2) Any potential Fourteenth Amendment substantive due process and equal protection claims being asserted by Plaintiff are necessarily subsumed by his Fourth Amendment claim and cannot stand as a matter of law; (3) Plaintiff's claims under the Pennsylvania Constitution are barred as a matter of law; (4) Plaintiff's claims for excessive force cannot stand as a matter of law; (5) Defendant Moletzsky is entitled to qualified immunity; (6) Plaintiff's *Monell* claims fail as a matter of law; and, (7) punitive damages are not available to Plaintiff.

### A. The Bases for Plaintiff's Constitutional Claims Under 42 U.S.C. §1983[9]

Defendants first contend that Plaintiff is improperly relying upon the negligent acts of Officer Moletzsky in support of his constitutional claims and that any Fourteenth Amendment substantive due process rights Plaintiff may be attempting to assert, are subsumed by his Fourth Amendment claims. In that same vein, Defendants assert that discovery in this matter has revealed no evidence of willful misconduct by Officer Moletzsky, which would be necessary to sustain his claims under 42 U.S.C. §1983.

Preliminarily, "[t]o prevail on a cause of action under section 1983, a plaintiff must prove that the conduct of a state actor deprived him of a right, privilege, or immunity secured by the United States Constitution or the law[s] of the United States." *Carroll v. Borough of State College*, 854 F. Supp. 1184, 1189 (M.D. Pa. 1994), *aff'd,* 47 F.3d 1160 (3d Cir. Pa. 1995). In cases such as this wherein the court is asked to review a cause of action involving the alleged use of excessive force, it has been held that "[b]ecause the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham v. Connor*, 490 U.S. 386, 395 (1989). *See also Abraham v. Raso,* 183 F.3d 279, 288 (3d Cir.1999)("[E]xcessive force in the course of an arrest is properly analyzed under the Fourth Amendment, not under substantive due process.")(citation omitted); *Mellott v. Heemer,* 161 F.3d 117, 121 (3d Cir. 1998)("'[A]ll claims that law

---

[9] For ease of discussion, this Court will address the arguments contained within Section IV, Subsections "A" and "B" of Defendant's Memorandum of Law in Support of Motion for Summary Judgment, together in this portion of its Opinion.

enforcement officers have used excessive force … in the course of a [ ] … seizure of a free

citizen should be analyzed under the Fourth Amendment and its reasonableness standard, rather

than under a substantive due process approach.'"")(citation omitted), *cert. denied,* 526 U.S. 1160

(1999).

   The courts have specifically admonished that:

> The Fourteenth Amendment Due Process Clause is not "a font of tort law to be
> superimposed upon whatever systems may already be administered by the States."
> "The Due Process Clause is simply not implicated by a negligent act of an official
> causing unintended loss of or injury to life, liberty, or property."

*Fulkerson v. Lancaster*, 801 F. Supp. 1476, 1480 (E.D. Pa. 1992)(citations omitted), *aff'd,* 993

F.2d 876 (3d Cir. Pa. 1993).

   *Fulkerson* involved a high speed police chase which resulted in injuries to other travelers

on the same road.  In granting summary judgment on the plaintiffs' Section 1983 claims, the

court concluded that " . . . plaintiffs have shown, at most, evidence that the pursuing officer may

have acted imprudently in continuing his pursuit over roads with which he was not very familiar

or in driving at too high a speed. Prudence and imprudence are the subject of negligence law, not

due process, and this claim cannot succeed under § 1983." *Id.* at 1481.

   Mindful of the foregoing, the testimonial record presented thus far is overwhelmingly

replete with conflicting "he said/she said" versions of what actually occurred during the early

morning hours of June 24, 2006.  In pertinent part, Plaintiff testified during his deposition that as

he ran from Officer Moletzsky through the McDonald's parking lot in a straight line towards a

fence, she pursued him from behind[10] with her patrol car and he believed she was trying to run

---

   [10]  Specifically, Plaintiff testified that Officer Moletzsky drove almost parallel to him,
remaining slightly behind him to the left side.  (Taylor Dep. 64:13-15.)

him down and hit him with said car. (Taylor Dep. 64:1, 13-20; 65:11-19.) Officer Moletzsky, on the other hand, testified that she lost sight of Plaintiff when he ran into the parking lot and that it was only when he ran out of some bushes that she saw him, slammed on her brakes, and skidded into him with the car on the wet pavement. (Moletzsky Dep.74:1-24; 75:1-17.) In that same vein, Plaintiff's claims are based on his assertion that Officer Moletzsky was pursuing him as a fleeing suspect, while Officer Moletzky's defense is based upon her contention that the collision at issue was purely an accident and that it did not occur while in "pursuit" of a suspect.[11] Resolution of these genuine issues of material facts will determine whether or not Plaintiff was "seized" when the police vehicle struck him, thereby implicating his Fourth Amendment rights, or whether this was in fact just an accident. The Courts have noted that ". . . conflicts of credibility should not be resolved on summary judgment 'unless the opponent's evidence is too incredible to be believed by reasonable minds.'" *Grove v. City of York*, 342 F. Supp. 2d 291, 309 (M.D. Pa. 2004)(citation omitted). Assessing the facts in a light most favorable to the non-moving party herein, this Court cannot conclude as a matter of law that Officer Moletzsky's actions were negligent, as opposed to willful. Accordingly, summary judgment cannot be granted on this basis.

---

[11] The record demonstrates that Officer Moletzsky was searching for a suspect who had just fled from another officer and when she first saw Plaintiff walking on High Street near the McDonald's parking lot, she believed Plaintiff was said suspect, based upon a description provided over the police radio. (Moletzsky Dep.42:20-24; 43:1-24; 44:1-19.) However, in her deposition, Officer Moletzsky maintained that she was not pursuing Plaintiff, but instead, was merely ". . . trying to get around, into the parking lot, to get ahead of him and keep [her] eyes on him." (Moletzsky Dep. 60:18-19.)

## B. Plaintiff's Private Cause of Action Under Article I, Section 8 of the Pennsylvania Constitution

Defendants additionally seek summary judgment on all claims being brought pursuant to Article I, Section 8 of the Pennsylvania Constitution on the basis that there is no private cause of action for damages under same.

The Pennsylvania courts have determined that whether or not a private cause of action and money damages should be available under Article I, Section 8 of the Pennsylvania Constitution, must be determined on a case-by-case basis. In *Jones v. City of Philadelphia*, 890 A.2d 1188 (Pa. Commw. Ct. 2006), *appeal denied*, 909 A.2d 1291 (2006), the defendant alleged that he had been personally injured when the numerous police officers used excessive force in apprehending him for driving an admittedly stolen car. Although the trial court found that the plaintiff could sustain a separate cause of action under Article I, Section 8 of the Pennsylvania Constitution, the Commonwealth Court reversed and granted the defendants' request for summary judgment. In doing so, the court held that:

> Under the facts in this case, however, there is no evidence that the protection against the use of excessive force in Article I, Section 8, is broader than the Fourth Amendment. Because the same test would be applied here, to protect the same interest, under both Federal and State Constitutions, the protections are coextensive and Jones' right to be free from governmental use of excessive force is protected by the Federal Constitution as it would be under the Pennsylvania Constitution. Importantly, unlike in *Bivens*, there is no state statute which generally provides for a right to sue for this violation. There are many factors which counsel hesitation against the courts creating a new monetary remedy, where a remedy already exists, without benefit of legislative action. Consequently, we hold that, in this case, there is no separate cause of action for monetary damages for the use of excessive force in violation of Article I, Section 8 of the Pennsylvania Constitution. The trial court order is reversed as to the City of Philadelphia, and summary judgment is granted for the City.

*Id.* at 1216.

The *Jones* holding was reiterated and relied upon in a recent case emanating from this

District:

> The Supreme Court of Pennsylvania has not yet ruled on the issue of whether the Pennsylvania Constitution provides a cause of action for damages for State Constitutional violations. Indeed, we have located no Pennsylvania case which implies a private right of action for damages for state constitutional violations. We have, however, located opinions from the Commonwealth Court of Pennsylvania, as well as from this Court and our sister court, explicitly holding that no such right exists under the Pennsylvania Constitution. *See R.H.S. v. Allegheny County Dept. of Human Servs., Office of Mental Health*, 936 A.2d 1218, 1225-26 (Pa. Commw. Ct. 2007) ("[N]either statutory authority, nor appellate case law has authorized the award of monetary damages for a violation of the Pennsylvania Constitution." (quoting *Jones v. City of Philadelphia*, 890 A.2d 1188 (Pa. Commw. Ct. 2006); *Underwood v. Beaver County Children and Youth Servs.*, No. 03-1475, 2005 U.S. Dist. LEXIS 23012, 2007 WL 3034069, at *2 (W.D. Pa. Oct. 7, 2007); *Mitchell v. Street*, 415 F. Supp. 2d 490, 497-98 (E.D. Pa. 2005); *Ryan v. Gen. Mach. Prods.*, 277 F. Supp. 2d 585, 595 (E.D. Pa. 2003). Accordingly, we find that Harris's claim for damages based on violations of the Pennsylvania Constitution fails, and we dismiss Count IV.

*Harris v. Paige*, 2009 U.S. Dist. LEXIS 87185, at **11-13 (E.D. Pa. Sept. 22, 2009).[12]

---

[12]  In yet another decision issued just weeks ago in the United States District Court for the Middle District of Pennsylvania, the Honorable A. Richard Caputo reached the same conclusion:

> Plaintiffs allege at Count III that the Defendants' use of excessive force also violated [Plaintiff's] rights under Article I, §§ 8 and 9 of the Pennsylvania Constitution, and thus he is entitled to monetary damages. The Defendants argue that no private cause of action for damages available under the Pennsylvania Constitution. Plaintiffs correctly note that the Supreme Court of Pennsylvania has not ruled on this issue. While this is true, other courts to consider this issue have uniformly held that the Pennsylvania Constitution does not create a private right of action. I agree with these decisions, and find that there is no private cause of action available for seeking monetary damages for violations for the Pennsylvania constitution. Summary judgment will be granted for the Defendants as to Count III.

*Bodnar v. Wagner*, 2010 U.S. Dist. LEXIS 289, at **20-21 (M.D. Pa. Jan. 5, 2010)(citations omitted).

11

In view of the foregoing, Defendants' request for summary judgment on Plaintiff's state constitutional claims shall be granted.

## C.     Excessive Force

Defendants next assert that Plaintiff's excessive force claim must be dismissed as a matter of law because Officer Moletzsky's conduct amounted to negligence, at most.

As discussed hereinabove in the context of Plaintiff's substantive due process claim, it is well established that:

> *[A]ll* claims that law enforcement officers have used excessive force - deadly or not - in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims. n10
>
> n10 A "seizure" triggering the Fourth Amendment's protections occurs only when government actors have, "by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen."

*Graham,* 490 U.S. at 395(emphasis in original)(citation omitted).

Accordingly, in determining the reasonableness of Officer Moletzsky's conduct, this Court must consider . . .

> [T]he severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, whether the suspect is actively resisting arrest or attempting to evade arrest by flight, the duration of the police officers' action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time. Because "police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain and rapidly evolving - about the amount of force that is necessary in a particular situation," [the court must] consider the perspective of a reasonable officer rather than using the 20/20 vision of hindsight in evaluating reasonableness.

*Boria v. Bowers,* 2009 U.S. Dist. LEXIS 57005, at ** 27-28 (E.D. Pa. Sept. 22, 2009)(citations omitted).  Assessing the record in a light most favorable to Plaintiff as the non-moving party, it has been established that: (1) Corporal Michael Ponto initially approached Plaintiff because he believed Plaintiff had littered from inside a parked car;[13] (2) Plaintiff immediately fled the vehicle;[14] (3) Corporal Ponto soon thereafter discovered a bag containing what he believed to be marijuana in the vehicle, along with Plaintiff's driver's license and photograph of Plaintiff holding a child;[15] (4) based upon the foregoing, Corporal Ponto thereafter issued a radio bulletin, informing other officers on duty that a suspect had fled from a vehicle stop, and providing a description of the suspect, as well as the direction towards which the suspect fled;[16] (5) Officer Moletzsky was on duty and saw Plaintiff, whom she believed fit the description;[17] (6) Plaintiff did not appear to be disorderly in any way or appear to be in violation of any law;[18] and, (6) upon being asked by Officer Moletzsky to stop walking so that she could talk to Plaintiff, he fled on foot and the officer followed in her police car, ultimately colliding with Plaintiff.[19]

Inasmuch as genuine issues of material facts exist regarding whether or not Defendant Moletzsky's conduct in striking Plaintiff with her police vehicle constituted a "seizure" or was

---

[13]  (Prelim. Hr'g Tr. 5:2-7.)

[14]  (Prelim. Hr'g Tr. 5:8-9.)

[15]  (Prelim. Hr'g Tr. 7:16-24; 8:1-4.)

[16]  (Moletzsky Dep. 37:13-24; 38:1-14; Prelim. Hr'g Tr. 5:2-7; 18:19-23.)

[17]  (Moletzsky Dep. 39:18-22.)

[18]  (Moletzsky Dep. 44:22-23; 45:1-5.)

[19]  (Moletzsky Dep. 47:14-15; 54:6-23.)

instead an "accident," Defendants' request for summary judgment on Plaintiff's excessive force claim must be denied.[20]

**D.      Qualified Immunity**

Next, Defendants contend that summary judgment must be granted on Plaintiff's claims against Officer Moletzsky, for she is entitled to qualified immunity.

The doctrine of qualified immunity has been explained as follows:

> Qualified or "good faith" immunity is an affirmative defense that must be pleaded by a defendant official. Decisions of this Court have established that the "good faith" defense has both an "objective" and a "subjective" aspect. The objective element involves a presumptive knowledge of and respect for "basic, unquestioned constitutional rights."  The subjective component refers to "permissible intentions." Characteristically the Court has defined these elements by identifying the circumstances in which qualified immunity would not be available. Referring both to the objective and subjective elements, we have held that qualified immunity would be defeated if an official "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury . . . ."

*Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982)(citations omitted).

In terms of assessing a defense of qualified immunity in the context of a summary judgment motion, "[j]ust as the granting of summary judgment is inappropriate when a genuine issue exists as to any material fact, a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis." *Curley v. Klem*, 298 F.3d 271, 278 (3d Cir. 2002), *aff'd,* 499 F.3d 199 (3d Cir. 2007).  In the case presently

---

[20]  *See Brower v. County of Inyo,* 489 U.S. 593, 596 (1989)("Violation of the Fourth Amendment requires an intentional acquisition of physical control. A seizure occurs even when an unintended person or thing is the object of the detention or taking  but the detention or taking itself must be willful.")

before this Court, it is undisputed that Officer Moletzsky was acting under the color of law when the incident occurred. However, it is alleged by Plaintiff that Officer Moletzsky pursued and ultimately "seized" him by intentionally running him over with her police vehicle. Clearly, the well-established constitutional right to be free from an unreasonable seizure by means of excessive force would be implicated in a scenario such as this. However, in attempting to assess the reasonableness of Officer Moletzsky's actions, one critical question still remains: did Officer Moletzsky *intend* to seize Plaintiff by striking him with her police vehicle, or was it purely an *accident*, as the officer so contends? If Officer Moletzsky's actions are ultimately proven to be intentional, then clearly, a jury could potentially find that said actions were malicious and were intended to cause a deprivation of Plaintiff's constitutional rights or other injury. Therefore, inasmuch as a genuine issue as to this material fact remains, summary judgment regarding Officer Moletzsky's qualified immunity defense is necessarily precluded.

### E.    Monell

Defendants next maintain that Plaintiff has failed to establish his *Monell*[21] claim against the Borough of Pottstown (hereinafter "Defendant Pottstown"), thereby entitling said defendant to summary judgment on same.

In his Complaint, Plaintiff alleges that Defendant Pottstown: (1) had knowledge that a police vehicle -vs- pedestrian suspect pursuit would occur but developed and maintained policies or customs that were deliberately indifferent to the constitutional rights of people in Pottstown; (2) had policies, customs or practices which permitted inadequate and improper investigations of

---

[21] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) provides that a municipality may be held liable for damages if it is determined that there was a failure to train, discipline, or supervise employees and that there was deliberate indifference on the part of policymakers, or the municipality's policies or customs caused a violation of a person's constitutional rights.

citizen complaints of police misconduct and said acts of misconduct were tolerated by Defendant

Pottstown; (3) had policies, customs or practices which allowed for inadequate or improper

training of police officers regarding the constitutional rights of persons and against a "code of

silence" between officers; (4) had policies, customs or practices which permitted inadequate

disciplining and sanctioning of police officers who commit constitutional violations; and, (5) did

not require appropriate in-service training or re-training of officers who were known to have

engaged in police misconduct. (Pl.'s Compl. ¶¶41-50.) In support of these claims, Plaintiff

submits the expert report of Criminologist R. Paul McCauley. (Pl.'s Exs. in Supp. Opp'n Summ.

J., Ex. F.)

In further examining the "policy" provision of *Monell*, the courts have opined that:

> The absence of a policy does not thereby relieve a municipality of liability. A custom, while not formally adopted by the municipality, may lead to liability if the 'relevant practice is so widespread as to have the force of law.' This requirement should not be construed so broadly as to circumvent *Monell*: '[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, ***unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy***…' Liability may not be imposed solely on a respondeat superior theory. The plaintiff must demonstrate the municipality, through one of its policymakers, affirmatively proclaimed the policy (or acquiesced in the widespread custom) that caused the violation. ***Where the alleged custom is not itself unconstitutional, the plaintiff bears a comparably heavier burden of establishing municipal fault and causation by more than proof of a single incident . . . Accordingly, to survive summary judgment under this standard, the plaintiff must produce facts tending to show the [Police Department] knew of a pattern of constitutional violations or that such consequences were so obvious the [Police Department's] conduct can only be characterized as deliberate indifference.***

*Pelzer v. City of Phila.*, 2009 U.S. Dist. LEXIS 78554, at \*\*36-38, 40 (E.D. Pa. Aug. 31,

2009)(citations omitted)(emphasis added).[22]

---

[22] *See also Boria,* 2009 U.S. Dist. LEXIS 57005, at \*44 ("'A custom under *Monell* can usually not be established by a one-time occurrence.' A municipality cannot be held vicariously

As previously stated, Plaintiff's first *Monell*-based allegation is that Defendant Pottstown had knowledge that a police vehicle -vs- pedestrian suspect pursuit would occur but developed and maintained policies or customs that were deliberately indifferent to the constitutional rights of people in Pottstown. In his Report, Dr. McCauley states that Defendant Pottstown's policies as contained within its General Orders, "make no mention of chasing pedestrian/suspects with a police vehicle. It is clear the PPD policies were deficient and as a result the PPD did not reasonably train PO Moletzsky." (Pl.'s Exs. in Supp. Opp'n Summ. J., Ex. F, 7.)

A review of the record *in toto* fails to establish that the incident at bar was caused by an existing, unconstitutional policy. Moreover, Plaintiff has failed to establish Defendant Pottstown's fault and causation by more than this one incident and most importantly, has failed to produce facts which would tend to show that Defendant Pottstown knew of a pattern of constitutional violations or that such consequences were so obvious that Pottstown's conduct can only be characterized as deliberate indifference. In fact, Dr. McCauley cites to <u>no other incidents</u> in his extensive Report. The "deficiencies" relied upon in said Report relate solely to Officer Moletzsky's failure to exercise "due regard" on this one occasion. (Pl.'s Exs. in Supp. Opp'n Summ. J., Ex. F, 8.) As such, Dr. McCauley's conclusion that "The policies, practices, and customs of the PPD, permitted the use of excessive force in apprehending fleeing non-felon pedestrian suspects" is unfounded. (Pl.'s Exs. in Supp. Opp'n Summ. J., Ex. F, 10.)

Plaintiff further alleges in his Complaint that "It was the policy, custom, or practice of the

_____

liable for the constitutional violations of its agents under a theory of respondeat superior. Municipal entities are only liable under Section 1983 when execution of a government's policy or custom inflicts the constitutional injury.")(citation omitted).

defendant the Borough of Pottstown to inadequately and improperly investigate citizen complaints of police misconduct and acts of misconduct were instead tolerated by the Borough of Pottstown." (Pl.'s Compl. ¶ 45.) When Plaintiff was asked during his deposition if he ever registered ". . . any kind of verbal or written complaint with the Pottstown Police Department about what happened" to him on June 24, 2006, he responded "No." (Taylor Dep. 21:11-15.) In his Report, Dr. McCauley concludes that despite the Commonwealth of Pennsylvania Police Crash Reporting Form and the Incident Investigation Reports that were generated by Corporal Michael Ponto and Police Officer Vince Stabilo, Defendant Pottstown's investigation of the matter ". . . at best, was a cursory internal investigation [ ]." (Pl.'s Exs. in Supp. Opp'n Summ. J., Ex. F, 11.) He additionally states that ". . . by failing to thoroughly and carefully investigate, [Defendant Pottstown] has encouraged such reckless conduct by other officers." (Pl.'s Exs. in Supp. Opp'n Summ. J., Ex. F, 11.)

The standard Dr. McCauley relies upon in reaching this conclusion, is derived from a "training key" out of a publication by The International Chiefs of Police (IACP), which provides in pertinent part that "Perhaps the most exacting aspect of the police discipline process is the investigation *of an allegation of misconduct* . . ." (Pl.'s Exs. in Supp. Opp'n Summ. J., Ex. F, 11.)(emphasis added) However, the record is devoid of any evidence that allegation(s) of misconduct relating to this incident were lodged at the time the investigations were conducted.[23] Accordingly, this portion of Count I of Plaintiff's *Monell* claim is without merit and Defendants

---

[23] As noted hereinabove, the incident at bar occurred on June 24, 2006. The police began their own investigations that same weekend and appear to have concluded both the crash and incident investigations by August of 2006. The claims now being asserted against Defendants were raised for the first time via commencement of the instant lawsuit more than one year later, on November 20, 2007.

are entitled to summary judgment on same.

Next, Plaintiff claims Defendant Pottstown had policies, customs or practices which allowed for inadequate or improper training of police officers regarding the constitutional rights of persons and against a "code of silence" between officers. Dr. McCauley speaks to the training issue by stating in pertinent part that:

> A reasonably trained police officer and field supervisor would know or should know the decision to initiate, continue, and terminate a police vehicle pursuit is not discretionary but based on objective criteria as presented in PPD General Orders. Police officers must follow written directives issued by the Chief of Police. Of course, in order to follow the written directives[,] the officers must understand the content. That did not happen here.
>
> It is clear PO Moletzsky was not properly directed by policies and therefore, not trained. Without proper policy directives, an officer does not know what his/her performance expectations are and therefore is unable to acquire the necessary skills to conduct a proper police vehicle pursuit. Also, pursuit knowledge and skills are perishable and require retraining/refreshing, which the PPD systematically did not do and could not do because even proper training in a defective policy results in deficient police skills. Simply, the PPD did not train PO Moletzsky how to conduct a police vehicle pursuit under these circumstances and the PPD's superficial IAI, which was reviewed and accepted by Chief Flanders, the policy maker, failed to detect any of the PPD policy and officer deficiencies.

(Pl.'s Exs. in Supp. Opp'n Summ. J., Ex. F, 14-15.)

Once again, Dr. McCauley's conclusions are based upon Officer Moletzsky's individual conduct on June 24, 2006 and nothing more. He is correct in noting that Officer Moletzsky would know or should know the decision to initiate, continue, and terminate a police vehicle pursuit is not discretionary but based on objective criteria as presented in PPD General Orders. He is also correct in his opinion that police officers must follow written directives issued by the Chief of Police. However, the fact that Officer Moletzsky might not have based her decision to initiate, continue or terminate what Plaintiff has described as a "pursuit" on the morning in

question, does not necessarily lead to the conclusion that Defendant Pottstown's policies and training were deficient to the extent that they were unconstitutional or to the extent that they necessarily caused Plaintiff's injuries. Instead, the fault and causation - whether it be by accident or intentional - lies with Officer Moletzsky.

It is well-settled that:

> To establish that the need for additional or different training is so obvious that the failure to provide it amounts to deliberate indifference to Constitutional rights, plaintiff may not rely solely upon one incident of injury caused by an officer trained in accordance with extant policies. Rather, plaintiff must provide some evidence that, by virtue of similar incidents or otherwise, the municipal policy makers were aware of the inadequacies of the police training policies in question and of better alternatives to such policies, yet deliberately chose to retain the flawed policies or acquiesced in a long-standing custom of pursuing such policies.

*Triest v. Rowan,* 1997 U.S. Dist. LEXIS 6630, at *27 (E.D. Pa. 1997), *aff'd,* 142 F.3d 429 (3d Cir. 1998).

Accordingly, this one incident alone does not establish a deliberate indifference by Defendant Pottstown. Officer Moletzsky testified that prior to being hired as a police officer by Defendant Pottstown, she obtained a degree in criminal justice and that after being hired, she participated in six months of mandatory training at the Montgomery County Fire Academy (home to the Police Academy). (Moletzsky Dep. 9:12-13; 10:8-16.) Said training was administered by the Municipal Police Officers' Education and Training Commission (MPOETC) and included both classroom and practical training. (Moletzsky Dep. 10:20-22; 11:2-18.) At the end of the training period, Officer Moletzsky was required to take a written examination, which she passed on her first attempt. (Moletzsky Dep. 10:3-12.)

Officer Moletzsky additionally testified that during her formal training, she was taught how to conduct searches and seizures. (Moletzsky Dep. 12:17-19.) Her training also included

instruction regarding pursuits.[24]  Namely, Officer Moletzsky " . . . received training on how to get ahead of where the person is to obtain a tactical advantage, to put [her]self in a safe position, to either get ahead of the person or to, at least, catch up, if there's another officer chasing the person on foot." (Moletzsky Dep. 20:14-20.)  This instruction was obtained during a four-month period of on-the-job training that she received from Field Training Officers after she began her job as a police officer.  (Moletzsky Dep. 20:21-24; 21:1-20.)  Training was also received on the topic of a police officer's authority to stop and detain, and to arrest. (Moletzsky Dep. 24:7-14.)

In view of the foregoing, any deficiency attributable to the incident at bar was not the product of a purportedly deliberate indifference to the unreasonable risk of serious injury that resulted from an improper policy and/or custom regarding training.  Instead, it was an isolated event attributable to one officer's personal lack of understanding and/or judgment regarding objective criteria as presented in the police department's General Orders pertaining to police vehicle pursuits.  Contrary to Dr. McCauley's finding that a ". . . the absence of the specific training and the existence of the failure to train policy or practice actually caused the injury, the excessive use of force," the record is devoid of any evidence to that effect.  (Pl.'s Exs. in Supp. Opp'n Summ. J., Ex. F, 17.)  Moreover, Plaintiff has provided absolutely no evidence to support his claim that Defendant Pottstown had policies, customs or practices which allowed for inadequate or improper training regarding  a "code of silence" between police officers.  *See Marshall v. Penn Township,* 2009 U.S. Dist. LEXIS 93210, at *4 (W.D. Pa. 2009)("In opposing a motion for summary judgment, the non-moving party must point to specific facts rather than to

---

[24]  This Court notes that Officer Moletzsky did not recall any specific occasion during her on-the-job training in which a police vehicle pursuit of a pedestrian suspect arose.  (Moletzsky Dep. 17:7-13.)

'some metaphysical doubt as to the material facts.' This means that the non-moving party cannot defeat summary judgment by relying on unsupported assertions, bare allegations, or speculation.")(citations omitted). Accordingly, Plaintiff's *Monell* claim cannot be sustained on either of these bases.

Next, Plaintiff asserts that Defendant Pottstown had policies, customs or practices which permitted inadequate disciplining and sanctioning of police officers who commit constitutional violations. Again, aside from a discussion regarding the incident at bar, the record is devoid of any other instance(s) which would support such a claim. Instead, Dr. McCauley again offers his conclusion - without reference to any basis for same - that Defendant Pottstown ". . . has a policy and/or custom of not taking corrective actions, including remedial training to create and/or improve officers' skills." (Pl.'s Exs. in Supp. Opp'n Summ. J., Ex. F, 19-20.) Inasmuch as material facts to support such a claim are non-existent, there is no genuine issue regarding same. For the same reason, Plaintiff's final *Monell*-based claim that Defendant Pottstown did not require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct, similarly cannot stand.

### F. Punitive Damages

Lastly, Defendants contend that as a matter of law, punitive damages are not available against municipal entities or defendants in their official capacities and that in order to obtain such damages under Section 1983, Plaintiff would have to establish that he was knowingly and maliciously deprived of his civil rights.

It is well-settled that:

> In suits brought pursuant to 42 U.S.C. § 1983, punitive damages may be recovered from individual officers but not from government entities, if the officers "conduct is shown to be motivated by evil motive or intent, or when it involves reckless or

> callous indifference to the federally protected rights of others." *Smith v. Wade*,
> 461 U.S. 30, 56, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983).

*Bodnar*, 2010 U.S. Dist. LEXIS 289, at *22.

Inasmuch as genuine issues of material facts regarding Defendant Moletzsky's conduct remain, Defendants' request for summary judgment on Plaintiff's punitive damages claim against said Defendant via Count II of Plaintiff's Complaint, is denied. However, for the reasons set forth in Section III(B) hereinabove, Defendants' request for summary judgment on Plaintiff's punitive damages claim against Defendant Moletzsky via Count IV of Plaintiff's Complaint is granted.

**IV.     Conclusion**

For the reasons set forth hereinabove, Defendants' Motion for Summary Judgment is hereby granted as to Counts I, III and IV of Plaintiff's Complaint and denied as to Count II.

An appropriate Order follows.


BY THE COURT:


/s/ C. Darnell Jones II     J.